**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| DHL EXPRESS (USA), INC., | |
| Plaintiff, | |
| | CASE NO. 6:12-cv-642 |
| v. | |
| F5 NETWORKS, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## ORIGINAL COMPLAINT

Plaintiff DHL Express (USA), Inc. ("DHL") files this Complaint against F5 Networks, Inc. ("F5"), requesting first that the Court order this matter to arbitration, and alternatively, that DHL recover its damages for F5's breach of its indemnity obligations to DHL and/or for breach of warranty of title and against infringement relating to claims of patent infringement made against DHL in *TQP Development, LLC, v. Ticketmaster Entertainment, Inc. et al.*, Case No. 2:09-cv-279 (E.D. Tex.) ("TQP Case").

## PARTIES

1.      DHL is a Delaware corporation with its principal place of business at 1210 S. Pine Island Rd., Plantation, FL 33324.

2.      F5 is a Washington corporation with its principal place of business at 401 Elliott Avenue West, Seattle, WA 98119.  F5 may be served through its registered agent in Texas, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship between the parties, and the amount-in-controversy exceeds $75,000.

4.      This Court has specific and general personal jurisdiction over F5 because F5 has purposefully availed itself of the benefits and protections of the laws of the State of Texas by previously filing suit in the Eastern District of Texas, relating to the TQP Case, and by maintaining substantial and continuous business contacts and relationships in Texas, including selling products to companies in Texas, such as its largest reseller, Dell, Inc.

5.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.  The TQP Case was litigated in this district, thereby triggering F5's duty to defend DHL in this district.  F5 failed to take up DHL's defense in the TQP Case, thus forcing DHL to defend itself and incur costs and expenses in this district.  Additionally, F5 brought suit in this district against TQP to enforce a license that was intended to resolve TQP's claims against DHL.

## FACTUAL BACKGROUND

6.      DHL purchased F5 products known as Big-IP Load Balancers ("F5 Products") with F5 software licenses.

7.      TQP initiated the TQP Case by filing a complaint against DHL for infringement of U.S. Patent No. 5,412,730 ("the '730 Patent") in the Eastern District of Texas.   The infringement claims related to the F5 Products that DHL purchased.

8.      On information and belief, F5 knew about the infringement issues and filing of the TQP Case.

9.      DHL communicated with F5 about the TQP Case and tendered the defense of the case to F5 and demanded indemnity against the infringement claims.

10.     F5 refused the tender of the defense and has, to this day, refused to indemnify DHL for its costs and expenses in defending the TQP Case based on the F5 Products.

11.     DHL was forced to defend itself and incurred reasonable and necessary fees and expenses in doing so, which should have been undertaken or reimbursed by F5.  DHL's fees and costs for defending itself exceeded $1,000,000.

12.     After the TQP case was filed and after repeated communications, F5 eventually forwarded to DHL two F5 licenses in the form of end-user license agreements ("EULA(s)") stating that "F5 believes these are the two EULAs executed by DHL."  *See* attachments to Exhibit 1.  One EULA is titled "END USER SOFTWARE LICENSE" ("EULA 1").  The other EULA is titled "EULA ORIGINAL COMMERCIAL LICENSE" ("EULA 2").  Each EULA includes an indemnity provision that obligates F5 to defend DHL and pay its defense costs.

13.     On information and belief, EULA 1 applies in this case to all of the F5 Products.

14.     EULA 1 has an infringement indemnity provision, obligating F5 to indemnify DHL for the costs of defense and any ultimate liability with respect to a patent infringement claim.  The indemnity clause reads:

> 6. Infringement Indemnity.
>
> (a) F5 will, at its expense, defend any suit brought against Licensee by an unaffiliated third party based upon a claim that the Software infringes a valid patent, trademark or copyright or misappropriates a third party trade secret.  . . . F5 will pay costs and damages (including reasonable attorneys' fees) finally awarded against Licensee or agreed in settlement by F5 directly attributable to any such claim and will bear all reasonable costs of the investigation and defense of the claim, but only on condition that (i) Licensee notifies F5 in writing of such claim promptly following receipt of notice, (ii) F5 has sole control of the defense and settlement negotiations, (iii) Licensee provides F5 all non-privileged information and communications received by Licensee concerning such claim, and (iv) Licensee provides reasonable assistance to F5 when requested. Licensee will have the right to participate in the defense with counsel of its own choosing at its expense provided that such representation does not interfere with F5's right to control the defense.

15.   Alternatively, in the event that EULA 1 does not apply, the EULA 2 applies in this case to all of the F5 Products.

16.   EULA 2 also has an infringement indemnity provision, obligating F5 to indemnify DHL for the costs of defense and any ultimate liability with respect to a patent infringement claim.  The indemnity clause reads:

> 6. Infringement Indemnity. F5 will, at its expense, defend any suit brought against Licensee based upon a claim that the Product as delivered by F5 directly infringes a valid patent or copyright. F5 will pay costs and damages finally awarded against Licensee directly attributable to any such claim, but only on condition that (a) F5 is notified promptly in writing of such claim by Licensee, (b) F5 has sole control of the defense and settlement negotiations, (c) Licensee provides F5 all information and communications received by Licensee concerning such claim, and (d) Licensee provides reasonable assistance to F5 when requested. F5 will have the right, at its option and expense, (i) to obtain for Licensee rights to use the Product, (ii) to replace or modify the Product so it becomes non-infringing, or (iii) to accept return of the Product in exchange or for a credit not to exceed the purchase price paid by Licensee for such Product. The foregoing, subject to the following restrictions, states the exclusive liability of F5 to Licensee concerning infringement.

17.   Alternatively, DHL's purchase of the F5 Products constitutes a contract for the sale of goods under the Uniform Commercial Code ("UCC"), which includes a warranty of title and against infringement under Section 2-312.

18.   Not only did F5 have these indemnity obligations (including providing and paying for DHL's defense), it understood these obligations.  After the TQP case was filed, and after DHL and apparently others had made indemnity demands, F5 approached TQP and obtained a license agreement to ensure that F5's customers, such as DHL, and resellers were covered for the use of various F5 products.  F5 entered into a license agreement with TQP to cover F5's products and services that directly or indirectly practice one or more claims of the '730 Patent.

19.     Nevertheless, following the execution of the license agreement, TQP did not dismiss its claims against DHL and continued to pursue those claims of patent infringement.

20.     To ensure that DHL benefited from F5's efforts to protect DHL from ultimate liability consistent with some (but not all) of its indemnification obligations, F5 filed an action against TQP in the Eastern District of Texas to enforce the terms of its settlement agreement and license.  *See F5 Networks, Inc. v. TQP Development, LLC*, 6:11-cv-534 (E.D. Tex.).   F5 explicitly mentioned the Big-IP products by name in its Amended Complaint against TQP.   In its request for relief, F5 asked for an injunction prohibiting TQP from continuing its infringement suit against any of F5's customers based on their use of F5 products, including the Big-IP products.

21.     F5's license and subsequent lawsuit against TQP regarding the F5 Products are admissions that confirm F5's obligation to defend and indemnify DHL.

22.     As a result of F5's actions undertaken in partial satisfaction of its indemnification obligations, TQP ultimately dismissed its patent infringement claims against DHL.

23.     F5 remained and remains obligated to DHL for the costs and expenses of its defense until the time of DHL's dismissal from the TQP case.

## COUNT I
## REQUEST FOR ORDER TO COMPEL ARBITRATION UNDER 9 U.S.C. § 4
*(EULA 1)*

24.     DHL incorporates by reference the allegations in paragraphs 1-23.

25.     All conditions precedent for this cause of action have been satisfied.

26.     Under 9 U.S.C. § 4, a court is empowered to compel a party to arbitrate under a written agreement.

27.     F5 identified EULA 1 as being applicable to the F5 Products.  *See* Exhibit 1.

28.     EULA 1 is a valid and enforceable contract between DHL and F5.

29.     EULA 1 contains a mandatory arbitration provision that requires the parties to attempt to resolve any disputes first by direct discussions, then by mediation, and finally by arbitration.  The arbitration provision reads:

> 13. Miscellaneous. This License will be governed by the laws of the State of Washington, USA without regard to its choice of law rules. The provisions of the U.N. Convention for the International Sale of Goods and the Uniform Computer Information Transactions Act, in whatever form adopted, will not apply and the parties specifically opt out of the application of such laws. In the event of any dispute arising out of or relating to this Agreement, the parties shall seek to settle the dispute via direct discussions. If a dispute cannot be settled through direct discussions, the parties agree to first endeavor to settle the dispute via voluntary nonbinding mediation, before resorting to arbitration. A mediator will be selected by voluntary agreement of both parties, or in the event both parties cannot agree on a mediator, a mediator will be selected in accordance with the rules of JAMS. The mediation shall be held in Seattle, Washington. Each party shall bear its own costs and expenses and an equal share of the administrative and other fees associated with the mediation. Any dispute that remains unresolved following mediation shall be settled by arbitration administered by the JAMS in accordance with its Comprehensive Arbitration Rules. The place of arbitration shall be Seattle, Washington. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitrator(s) shall award to the prevailing party, if any, as determined by the arbitrator(s), all of its costs and fees. "Costs and fees" mean all reasonable pre-award expenses of the arbitration, including the arbitrators' fees, administrative fees, travel expenses, out-of-pocket expenses such as copying and telephone, court costs, witness fees, and attorneys' fees. In rendering the award, the arbitrator(s) shall determine the rights and obligations of the parties according to the substantive and procedural laws of the State of Washington. The foregoing alternative dispute resolution provisions will not apply to claims or actions related to the infringement, misappropriation or violation of F5's intellectual property rights or those of its third party licensors and such actions may be brought in any court of competent jurisdiction. Any provisions found to be unenforceable will not affect the enforceability of the other provisions contained herein, but will instead be replaced with a provision as similar in meaning to the original as possible. This License constitutes the entire agreement between the parties with regard to its subject

matter. No modification will be binding unless in writing and signed by the parties.

30.   This dispute is within the scope of the arbitration clause.   Further, direct discussions between the parties have failed, and F5 has refused to attend mediation and/or arbitration with DHL concerning F5's duties to defend and indemnify DHL.   F5 has ignored and refused repeated requests by DHL to discuss efficient ways to resolve this matter, including proceeding with discussions, mediation, and arbitration.   It is evident that court action is necessary to compel F5 to satisfy its obligations.

31.   DHL continues to be aggrieved by F5's failure and refusal to arbitrate these issues under EULA 1's arbitration provision.

32.   DHL is entitled to an order compelling F5 to arbitrate under EULA 1.

## COUNT II
## BREACH OF CONTRACT
*(EULA 1)*

33.   DHL incorporates by reference the allegations in paragraphs 1-32.

34.   All conditions precedent for this cause of action have been satisfied.

35.   EULA 1 is a valid and enforceable contract between DHL and F5.

36.   EULA 1 includes an indemnity provision that obligates F5 to defend DHL and pay its defense costs in the event of a lawsuit alleging patent infringement.

37.   DHL was sued in the TQP Case for patent infringement based on the F5 Products.

38.   Thus, under EULA 1, F5 was obligated to defend DHL and pay its defense costs.

39.   DHL communicated with F5 about the TQP Case, tendered defense of the case to F5 and demanded indemnity against the infringement claims.   DHL performed any obligations it had.

40.     F5 refused the tender of the defense and refused to indemnify DHL for its costs and expenses in defending the TQP Case based on the F5 Products.  By failing to fulfill its obligations to defend DHL in the TQP Case, F5 breached EULA 1.

41.     F5's breach caused DHL injury.  As a result of F5's breach, DHL is entitled to be reimbursed for its substantial costs and expenses and attorneys' fees in defending itself in the TQP Case based on the F5 Products.

**COUNT III**
**BREACH OF CONTRACT**
*(EULA 2)*

42.     DHL incorporates by reference the allegations in paragraphs 1-41.

43.     All conditions precedent for this cause of action have been satisfied.

44.     EULA 2 is a valid and enforceable contract between DHL and F5.

45.     EULA 2 includes an indemnity provision that obligates F5 to defend DHL and pay its defense costs in the event of a lawsuit alleging patent infringement.

46.     DHL was sued in the TQP Case for patent infringement based on the F5 Products.

47.     Thus, under EULA 2, F5 was obligated to defend DHL and pay its defense costs.

48.     DHL communicated with F5 about the TQP Case, tendered defense of the case to F5, and demanded indemnity against the infringement claims.  DHL performed any obligations it had.

49.     F5 refused the tender of defense and refused to indemnify DHL for its costs and expenses in defending the TQP Case based on the F5 Products.  By failing to fulfill its obligations to defend DHL in the TQP Case, F5 breached EULA 2.

50.     F5's breach caused DHL injury.  As a result of F5's breach, DHL is entitled, should EULA 2 be found to apply, to be reimbursed for its substantial costs and expenses and attorneys' fees in defending itself in the TQP Case based on the F5 Products.

## COUNT IV
## BREACH OF WARRANTY OF TITLE AND AGAINST INFRINGEMENT

51.     DHL incorporates by reference the allegations in paragraphs 1-50.

52.     All conditions precedent for this cause of action have been satisfied.

53.     Under the UCC, F5 warranted that it conveyed good and rightful title to the goods delivered, and that the goods delivered were free of claims of infringement by third parties.  *See* UCC § 2-312.

54.     DHL purchased the F5 Products in a contract for sale.

55.     At the time DHL purchased the F5 Products, DHL was not aware of any potential encumbrances on goods, including any claims of patent infringement.

56.     No document concerning the contract for sale contained an exclusion or modification by specific language suggesting that F5 did not claim title in itself or that F5 was purporting to sell only such right or title as it or a third person may have.

57.     F5 is a merchant regularly dealing in the goods of the kind of the F5 Products.

58.     DHL used the F5 Products as delivered and without any modification.

59.     DHL was sued in the TQP Case for patent infringement based on the F5 Products.

60.     Within a reasonable time, DHL communicated with F5 about the TQP Case, tendered defense of the case to F5, and demanded indemnity against the infringement claims.

61.     F5 refused the tender of defense and refused to indemnify DHL for its costs and expenses in defending the TQP Case based on the F5 Products.

62.     F5 breached the warranty of title because the title of the F5 Products was not conveyed free of the encumbrance of patent infringement claims.

63.     Additionally, F5 breached the warranty against infringement because the F5 Products were not delivered free of the rightful claim of any third person by way of infringement.

64.     F5's breach caused DHL injury.  As a result of F5's breach, DHL is entitled to be reimbursed for its substantial costs and expenses and attorneys' fees in defending itself in the TQP Case based on the F5 Products.

## COUNT V
## ATTORNEY FEES AND EXPENSES

65.     DHL incorporates by reference the allegations in paragraphs 1-64.

66.     All conditions precedent for this cause of action have been satisfied.

67.     DHL presented F5 with its demand for reimbursement of its attorneys' fees and was refused.

68.     F5 owed DHL a duty to defend and indemnify DHL under one of the EULAs. Additionally, F5 warranted that it was transferring good title to the F5 Products and that they were free of claims of infringement by others.  F5 breached its duties under the EULAs and breached the warranties of title and against infringement.

69.     As a result of F5's breaches, DHL suffered injury in the form of substantial costs and expenses, including its reasonable attorneys' fees, in defending itself in the TQP Case based on the F5 Products.  F5 continues to refuse to indemnify and reimburse DHL for its costs and expenses.

70.     As a result of such refusal, DHL was forced to hire counsel to bring the present action to enforce its rights under one of the EULAs and/or the UCC.

71.    DHL incurred and is incurring costs and expenses, including its reasonable attorneys' fees, in enforcing its rights and bringing this action, and it is entitled to such fees and costs in bringing this action.

## PRAYER FOR RELIEF

72.    DHL incorporates by reference the allegations in paragraphs 1-71.

73.    DHL respectfully requests that this Court enter:

a.  An order compelling the parties to arbitrate all claims between them pursuant to the terms of EULA 1;

b.  Alternatively, a judgment in favor of DHL that F5 breached its duties to defend and indemnify DHL against infringement claims in the TQP Case if the Court finds that EULA 1 applies;

c.  Alternatively, a judgment in favor of DHL that F5 breached its duties to defend and indemnify DHL against infringement claims in the TQP Case if the Court finds that EULA 2 applies;

d.  Alternatively, a judgment in favor of DHL that F5 breached its warranty of title and against infringement to DHL if the Court finds that the UCC applies;

e.  An award of damages in favor of DHL for the costs and expenses incurred in defending itself in the TQP Case;

f.  An award in favor of DHL in the amount of its fees and costs, including its reasonable attorneys' fees, to pursue and bring this action, as well as any attorneys' fees on appeal to any court; and

g.  All further relief that this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Subject to its request for an order to compel arbitration, pursuant to Rule 38 of the Federal Rules of Civil Procedure, DHL requests a trial by jury of any issues appropriately tried before a jury.

Respectfully submitted,

/s/ Paul F. Schuster
Paul F. Schuster
  State Bar No. 00784931
Hamad Hamad
  State Bar No. 24061268
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
(214) 740-8000
(214) 740-8800 (fax)

**ATTORNEYS FOR PLAINTIFF**
**DHL EXPRESS (USA), INC.**